UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JUAN GARCIA,<br><br>        Plaintiff,<br><br>  v.<br><br>PSI ENVIRONMENTAL SYSTEMS, a California Corporation, and WASTE CONNECTIONS, INC., a California Corporation,<br><br>        Defendants. | Case No. 1:10-CV-0055-EJL<br><br>**MEMORANDUM ORDER** |

## INTRODUCTION

Pending before the Court in the above-entitled matter is the Defendant's Motion for Partial Summary Judgment. The parties have filed responsive briefing and the matter is now ripe for the Court's review. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motion shall be decided on the record before this Court without oral argument.

**MEMORANDUM ORDER - 1**

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff, Juan Garcia, is a Hispanic United States citizen of Mexican descent. (Dkt. 52.)  On October 12, 2005, Mr. Garcia was hired by Defendant PSI Environmental Systems ("PSI")[1] as a garbage truck mechanic.  During his employment, Mr. Garcia alleges, he was denied pay raises and promotions that were awarded to other non-Hispanic Caucasians. Mr. Garcia worked for PSI until December 14, 2007. (Dkt. No. 1.)

In early 2008, Mr. Garcia filed a charge with the Idaho Human Rights Commission ("IHRC") and Equal Employment Opportunity Commission ("EEOC") alleging the Defendants had discriminated against him on the basis of his national origin. On May 7, 2009, the IHRC issued a determination finding that the Defendants had discriminated against Mr. Garcia. On November 5, 2009, the IHRC issued Mr. Garcia a Case Dismissal and Notice of Right to Sue; the EEOC likewise issued him a Notice of Right to Sue on February 11, 2010.

On February 3, 2010, Mr. Garcia initiated this action by filing a Complaint. (Dkt. 1.) He later amended the Complaint twice cumulating with the Second Amended Complaint filed on February 1, 2011 which alleges violations of 42 U.S.C. § 1981, the Idaho Human Rights Act ("IHRA"), and Title VII, 42 U.S.C. §§ 2000e-1 *et seq*. (Dkt. 35.) The claims allege the Defendants discriminated against Mr. Garcia based on his national origin and race by refusing to compensate him at the same rate as non-Hispanic Caucasian employees and

---

[1]  The other named Defendant, Waste Connections, Inc., is the parent company of PSI. (Dkt. 35.)

MEMORANDUM ORDER - 2

failing to promote him in favor of non-Hispanic Caucasians. Defendants have filed a Motion for Partial Summary Judgment which the parties have briefed and the Court now takes up as follows. (Dkt. 39.)

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The party moving for summary judgment has the initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). Once the moving party has met this initial burden, the nonmoving party has the subsequent burden of presenting evidence to show that a genuine issue of fact remains. The party opposing the

**MEMORANDUM ORDER - 3**

motion for summary judgment may not rest upon the mere allegations or denials of her

pleading, but must set forth specific facts showing that there is a genuine issue for trial.

*Id*. at 248. If the non-moving party "fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial" then summary judgment is proper as  "there can be no 'genuine

issue of material fact,' since a complete failure of proof concerning an essential element

of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).[2]

     Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of

summary judgment, must be both "material" and "genuine." An issue is "material" if it

affects the outcome of the litigation. An issue, before it may be considered "genuine,"

must be established by "sufficient evidence supporting the claimed factual dispute . . . to

require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn*

*v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co.*

---

[2] *See also,* Rule 56(e) which provides:

(e)  **Failing to Properly Support or Address a Fact.** If a party fails to properly
support an assertion of fact or fails to properly address another party's assertion of
fact as required by Rule 56(c), the court may:
    (1)    give an opportunity to properly support or address the fact;
    (2)    consider the fact undisputed for purposes of the motion;
    (3)    grant summary judgment if the motion and supporting materials--including
the facts considered undisputed--show that the movant is entitled to it; or
    (4)    issue any other appropriate order.

**MEMORANDUM ORDER - 4**

*Inc.*, 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. V. San Francisco Automotive Indus. Welfare Fund*, 883 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted). Of course, when applying the above standard, the court must view all of the evidence in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255; *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

## DISCUSSION

In the Second Amended Complaint, Mr. Garcia alleges 1) Pay Discrimination; 2) Failure to Promote; and 3) Discrimination in Terms and Conditions of Employment in violation of each of § 1981, IHRA, and Title VII. (Dkt. 35.) The Complaint presents nine claims separated out as to each statute and allegation of discrimination. The Court has grouped these claims for purposes of this Motion and will take up the parties' arguments as to each below.

**1.     Constructive Discharge**

  **A.     Exhaustion of Administrative Remedies**

Defendants argue because Mr. Garcia never claimed he was constructively discharged in his charges to the IHRC or the EEOC, his claim is barred as he failed to exhaust his administrative remedies. Mr. Garcia seems to agree that he did not "expressly allege" a constructive discharge claim. (Dkt. 52 at 6, 11.) Instead, he argues, the claim was properly exhausted under Title VII and the IHRA because the circumstances surrounding his departure from PSI were "made clear" during the administrative investigation and are intertwined with his other discrimination claims. (Dkt. 52 at 11.) Further, Mr. Garcia argues § 1981 does not require exhaustion and his constructive discharge claim for that provision was timely filed. (Dkt. 52 at 13.)

Both Title VII and the IHRA require a claimant to exhaust their administrative remedies prior to bringing a judicial action. *See* 42 U.S.C. § 2000e-5(b); Idaho Code Ann. § 67-5908(2). The exhaustion requirement is a matter of subject matter jurisdiction. *See B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1099 (9th Cir. 2002); *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994). "Under Title VII, a plaintiff must exhaust [their] administrative remedies by filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge." *B.K.B.*, 276 F.3d at 1099 (citing 42 U.S.C. § 2000e-5(b)).[3] "The administrative charge requirement serves the important purposes of giving the charged party notice of the claim

---

[3] In *B.K.B.* the agency failed to include the plaintiff's sexual harassment claim as a basis for the charge when it typed up the form even though the plaintiff had included it on her questionnaire. Under that circumstance, the Ninth Circuit concluded the plaintiff had exhausted her administrative remedies as to her sexual harassment claim.

**MEMORANDUM ORDER - 6**

and 'narrow[ing] the issues for prompt adjudication and decision.'" *Id.* (citations omitted). "The EEOC's failure to address a claim...has no bearing on whether the plaintiff has exhausted her administrative remedies with regard to that claim." *Id*. Likewise, whether "the EEOC in fact conducted any investigation at all is not material for purposes of exhaustion." *Id.* "Subject matter jurisdiction extends over all allegations of discrimination that either 'fell within the scope of the EEOC's actual investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination.'" *Id.* (quoting *Farmer Bros.*, 31 F.3d at 899 (emphasis in the original); *see also Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990) ("The jurisdictional scope of a Title VII claimant's court action depends upon the scope of both the EEOC charge and the EEOC investigation.").

"Even when an employee seeks judicial relief for claims not listed in the original EEOC charge, the complaint 'nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge.'" *Freeman v. Oakland Unified School Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (citation omitted). "Allegations of discrimination not included in the plaintiff's administrative charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." *B.K.B.*, 276 F.3d at 1100 (citations and internal quotations omitted). Stated differently, the district court has jurisdiction over any claims not specifically brought before the EEOC as long as they are "like or reasonably related to" the charges presented to the EEOC, or if the claims fall "within the scope of an EEOC

**MEMORANDUM ORDER - 7**

investigation that reasonably could [have been] expected to grow out of the allegations"
made before the EEOC. *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) (quoting
*Sosa*, 920 F.2d at 1456). Thus, the court "must inquire whether the original EEOC
investigation would have encompassed the additional charges made in the court complaint
but not included in the EEOC charge itself." *Sosa*, 920 F.2d at 1456.

In making this determination, the Court "consider[s] plaintiff's civil claims to be
reasonably related to allegations in the charge to the extent that those claims are
consistent with the plaintiff's original theory of the case." *B.K.B.*, 276 F.3d at 1100. In
doing so, the language of EEOC charges is construed with the "utmost liberality since
they are made by those unschooled in the technicalities of formal pleading." *Id.*; *see also*
*Sosa*, 920 F.2d at 1458. Factors such as "the alleged basis of the discrimination, dates of
discriminatory acts specified within the charge, perpetrators of discrimination named in
the charge, and any locations at which discrimination is alleged to have occurred." *Id.*
"The crucial element of a charge of discrimination is the factual statement contained
therein." *Id.*

Here, there is no dispute that Mr. Garcia did not expressly claim constructive
discharge in his filings to the EEOC and IHRC. (Dkt. 52 at 6, 11.) In his Charge of
Discrimination filed on March 13, 2008, Mr. Garcia alleged discrimination based on
national origin between October 12, 2005 and December 14, 2007. (Dkt. 39-13, Att. J)
(Dkt. 54-1, Ex. A.) Attached to the charge are the particulars of his claim wherein Mr.
Garcia states he was "paid less than non-Hispanics, and passed over for promotion." (Dkt.

39-13, Att. J, p. 2.) The paragraphs describing the charges discuss the promotions and

hourly rates arguments as well as the circumstances under which Mr. Garcia left his

employment with Defendant for a higher paying job. (Dkt. 39-12, Att. J. ¶¶ A-L.) The

Court finds the factual allegations in his charge do not contain claims reasonably related

to a claim for constructive discharge. The discriminatory statements made by Mr. Allen

do not appear to have been known to Mr. Garcia prior to his leaving for another job and,

therefore, did not cause his leaving. However, Paragraph I of the charge does state:

> Mr. McCartney also told me that after he became maintenance manager,
> Mr. Allen began pressuring him to get rid of me. Mr. McCartney said he
> refused, and that they had several arguments over it.

(Dkt. 39-13, Att. J, ¶ I.) IHRC's summary of investigation references this allegation in its

description of the complainant's position but then goes on to state he left his employment

with PSI for a better paying job. (Dkt. 52-1, Ex. A.) Again, whether or not Mr. Allen was

trying to "get rid" of Mr. Garcia does not appear to have been known by Mr. Garcia prior

to his departure.

There are references to Mr. Garcia's departure from his employment with PSI in

the letters sent to the IHRC. In his May 27, 2008 letter Mr. Garcia refers to having been

asked to write a letter of resignation. (Dkt. 39-14, Ex. K.) In another letter Mr. Garcia

discusses after he left the company that an "order" was given to call the police and have

he and the others who left arrested if they came on the premises; concluding with "So this

was a hostile environment place to work for." (Dkt. 39-14, Ex. K.) Such passing

references do not give rise to allegations supporting a constructive discharge claim. The

**MEMORANDUM ORDER - 9**

focus of the letters was on the failure to promote Mr. Garcia and wage discrimination. Even liberally construed, the letters do not contain allegations reasonably related to or out of which would reasonably be expected to grow a constructive discharge claim. Just the opposite, the letters consistently allege facts relating to the failure to promote and wage discrimination claims.

In his Declaration filed in this case, Mr. Garcia stated that during the IHRC investigation he "told the investigator that [he] felt forced to resign given the company's refusal to increase my pay and the other discriminatory treatment I experienced." (Dkt. 54, Garcia Dec. ¶ 12.) This Declaration, however, was not a part of the materials provided to the IHRC and EEOC. Therefore the statements contained therein are not afforded the same consideration in determining whether his charges reasonably included a claim for constructive discharge. As determined above, the materials before the agencies do not include facts which could reasonably be construed to include a constructive discharge claim.

Based on the foregoing, the Court concludes that Mr. Garcia failed to exhaust his administrative remedies as to any constructive discharge claim in this case because he did not raise any such claim before the respective agencies. The Motion for Summary Judgment is granted as to any constructive discharge claim under Title VII and the IHRA. Because § 1981 does not require exhaustion, however, the Motion is denied as to that basis for precluding any constructive discharge claim.

**MEMORANDUM ORDER - 10**

### B.    Voluntary Resignation

Even if such a claim is allowed, Defendants maintain Mr. Garcia cannot prove he was constructively discharged and, therefore, is not entitled to wages following his departure in December of 2007. Defendants point to Mr. Garcia's "admissions" that he left his employment with PSI in order to take a better paying job. (Dkt. 70 at 9.) Mr. Garcia argues he is entitled to damages beyond his constructive discharge date because he has alleged that "he was essentially constructively discharged." (Dkt. 52 at 7.)

"Where the alleged adverse action is a constructive discharge, a plaintiff must prove that working conditions became so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Patterson v. State, Dept. of Health & Welfare*, 256 P.3d 718, 725 (Idaho 2011) (quoting *Waterman v. Nationwide Mut. Ins. Co.*, 201 P.3d 640, 645 (Idaho 2009)) (quotations and marks omitted); *see also Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000) ("constructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer.") (citations and internal quotation marks omitted). To succeed on a constructive discharge claim, a plaintiff must demonstrate aggravating factors beyond what is necessary to establish a discrimination claim. *See Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007); *Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1144 (9th Cir. 2001).

Here, Mr. Garcia has not pointed to evidence giving rise to any genuine issues of material fact that he left his employment with PSI because of the alleged discrimination. Mr. Garcia stated in his deposition testimony that he left PSI after it refused to match the higher salary being offered by another company. Further, the discriminatory remarks made by Mr. Allen do not appear to have been known to Mr. Garcia until after he left PSI. As such, there is no evidence those remarks were the reason Mr. Garcia left his employment. Accordingly, the Court grants the Defendants' Motion for Summary Judgment as to any constructive discharge claim because Mr. Garcia has failed to demonstrate a genuine issue of material fact exists as to whether he can prove he left PSI because of the intolerable working conditions.

**2.     Promotion Claims**

Mr. Garcia claims that he was unlawfully denied promotions on three occasions: July of 2006, January of 2007, and May of 2007. Defendants argue the claims regarding these promotions are precluded by the applicable statute of limitations.

**A.     Statute of Limitations as to the § 1981 Claims**

The parties dispute the applicable statute of limitations for the § 1981 claims. Defendants argue the statute of limitations is Idaho's two-year statute of limitations for personal injury claims as the promotions themselves can constitute actionable contracts within § 1981's provisions. (Dkt. 39 at 13) (Dkt. 70 at 2-4.) Mr. Garcia maintains the four-year federal statute of limitations applies because the claims here involve conduct occurring after the formation of the contract formed with PSI when he was hired. (Dkt. 52

**MEMORANDUM ORDER - 12**

at 4.)

Section 1981 secures one's right to "make and enforce contracts." In its original form, § 1981 did not encompass wrongful termination or hostile work environment claims as those claims involved conduct occurring after the formation of the contract. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 373, 383 (2004) (discussing *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989)); *see also Johnson v. Lucent Tech. Inc.*, 653 F.3d 1000, 1005-06 (9th Cir. 2011). Thus the statute of limitations for § 1981 claims was the most appropriate analogous state statute of limitations. *Id*. In 1991, however, Congress amended § 1981 so that it defined the term "make and enforce contracts" to include the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship" such that it covered conduct occurring after the formation of the contract. *Id*. at 372. Following the amendment, claims arising under § 1981 made possible by an Act of Congress after December 1, 1991 were subject to the federal four-year statue of limitations. *See id*. and 28 U.S.C. § 1658. Thus, the most appropriate analogous state statue of limitations applies to § 1981 claims unless the statute giving rise to the claim was enacted after December 1, 1990; in which case the four-year statute of limitations applies. *Id*. at 371 (discussing *Goodman v. Likens Steel Co.*, 482 U.S. 656, 660 (1987) and 28 U.S.C. § 1658).

Defendants argue the two-year statute of limitations applies in this case because the promotion claims were cognizable under § 1981 before it was amended based on the holding in *Sitgraves v. Allied-Signal, Inc.*, 953 F.2d 570 (9th Cir. 1992). (Dkt. 70 at 1-2.)

**MEMORANDUM ORDER - 13**

Mr. Garcia argues the four-year statute of limitations applies because the conduct involving the promotions was post-contract formation conduct not subject to a claim under § 1981 prior to the amendment. (Dkt. 52 at 4-5.) The issue the Court must resolve then is whether Mr. Garcia's promotion claims could be brought under § 1981 pre-amendment or post-amendment.

Prior to the 1991 amendment, employment claims brought under § 1981 were allowed "only if they alleged discrimination in the *formation* of an employment contract, as opposed to claims based on discrimination while they are working in a particular position or discriminatory termination." *Strother v. Southern Cal. Permanente Med. Grp.*, 79 F.3d 859, 875-76 (9th Cir. 1996) (discussing *Patterson*, 491 U.S. at 185 ("[o]nly where the [denied] promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981.") (emphasis in original). A failure to promote claim was actionable under the pre-amendment § 1981 "only if the new position entailed an opportunity for 'a new and distinct relation between the employee and the employer,' such as an increase in pay, the addition of supervisory duties, or a change in the chain of responsibility." *Rodriguez v. Gen. Motors Corp.*, 27 F.3d 396, 399–400 (9th Cir. 1994) (quoting *Patterson*, 491 U.S. at 185); *see also Strother*, 79 F.3d at 876.

In *Sitgraves v. Allied–Signal, Inc.*, 953 F.2d 570 (9th Cir. 1992), the Ninth Circuit addressed promotion claims following the Supreme Court's decision in *Patterson* stating the holding "strongly suggests that, in addition to an increase in pay and duties, an

**MEMORANDUM ORDER - 14**

actionable promotion claim must involve a meaningful, qualitative change in the contractual relationship." *Id.* at 400. "Among the salient changes are 'the addition of supervisory duties; a change in the manner in which the contractual relationship can be terminated; a change in the method of compensation and acquisition of potential liability for firm obligations.'" *Id.* "'Under *Patterson* ..., the failure to promote is actionable under 42 U.S.C. § 1981 only if the new position entailed an opportunity for 'a new and distinct relation between the employee and the employer,'... such as an increase in pay, the addition of supervisory duties, or a change in the chain of responsibility.'" *Rodriguez*, 27 F.3d at 400-01. Thus, the question here is whether or not the promotions allegedly denied to Mr. Garcia involved a "new and distinct relation" between he and the Defendants.

Mr. Garcia argues a genuine issue of material fact exists as to whether the positions denied to him would have constituted a new and distinct relationship with PSI. He argues the promotions "would not have involved a meaningful, qualitative change in the contractual relationship." (Dkt. 52 at 5.) The promotions claims involve the maintenance manager position which Mr. Garcia alleges he was denied/passed over for three times because of his race. The maintenance manager position, he argues, had no formal written job description or requirements and, although supervisory in title, mainly entailed performing the same mechanical work as the regular mechanics. (Dkt. 52 at 5.) Mr. Garcia points out that the three individuals who filled the position stated the work they performed as maintenance manager was as much if not more mechanical work than

**MEMORANDUM ORDER - 15**

supervisory tasks.[4] (Dkt. 52 at 6.) Mr. Garcia further asserts had he received the

promotion it would not have changed his "at-will" employment status with PSI. (Dkt. 52

at 6.)

Defendants counter that only one of several factors need to be present in order for

a promotion claim to be actionable under pre-amendment § 1981. (Dkt. 70 at 2) (citing

*Sitgraves*, 953 F.3d at 574; *Odima v. Westin Tucson Hotel*, 53 F.3d 1484 (9th Cir. 1994).)

Additionally, Defendants argue the maintenance manager promotion position here had a

sufficient enough change to render it actionable under the § 1981 pre-amendment

provision because the position: was responsible for identifying and negotiating purchases

with vendors, complying with budgets, telling mechanics what work needed to be

performed and how, and ensuring completion of various paperwork. (Dkt. 70 at 3.) The

Court has reviewed the parties' arguments and concludes as follows.

The first promotional opportunity occurred in July of 2006 when Jason Martinez[5]

was asked to assume the roll as maintenance manager. In his deposition, Mr. Martinez

testified that his pay increased from $13.25 per hour to an annual salary of $35,000 but

that he didn't actually make any more money in the position. (Dkt. 53-6 at 89-90.) The

duties of the position, he stated, included paperwork, scheduling shifts, ordering supplies,

staying on budget, and making sure things were being done as they were supposed to be

---

[4] Jason Martinez was the first to fill the position in July of 2006; Tim Bagley followed him in January of 2007; and the third time the position was open in May of 2007 it was initially offered to Mr. Schwamb, who turned it down, and eventually filled by Mr. McCartney. (Dkt. 52 at 6.)

[5] Mr. Martinez is non-Hispanic.

**MEMORANDUM ORDER - 16**

done in the shop. (Dkt. 53-6.) In describing his work day, Mr. Martinez stated that 80 percent of his time he was in the shop working as a mechanic but also acknowledged that his supervisor, Don Allen, did not approve of the time he spent in the shop and instead wanted him working at his desk. (Dkt. 53- 6 at 71, 73.) Ultimately Mr. Martinez stepped down from the position because felt he was better used in the shop than behind desk. Mr. Martinez later left PSI. (Dkt. 53-6 at 80.)

Following Mr. Martinez, in January of 2007, the position was given to Tim Bagley. Mr. Bagley testified the duties of the position included maintaining the budget, organization and leadership of the shop, paperwork, and working with vendors. (Dkt. 53-2.) His days, Mr. Bagley stated, were generally spent half of the time on paperwork and half of the time doing mechanic work in the shop. Mr. Bagley testified that when he took the position his pay did not change. (Dkt. 53-2 at 55.) In May of 2007, Mr. Bagley stepped down from the position to become a driver for PSI; opening the position yet again. The open maintenance manager position was then given to Ed McCartney who was working in another of Defendants' facilities. Mr. McCartney described his duties as including office work, lots of hands on trouble-shooting to fix trucks and figuring out truck technical problems, budget, hiring new mechanics. (Dkt. 53-7.)

Having reviewed the record and the parties arguments on this point, the Court concludes the promotions claims alleged here are subject to the state's two-year statute of limitations. Mr. Garcia paints a picture of the management position as essentially being the same as his mechanic position and, therefore, not actionable before the 1991

**MEMORANDUM ORDER - 17**

amendments. However, the maintenance manager position clearly encompassed supervisory duties including responsibilities for maintaining budget, shift scheduling, dealing with vendors, and the like. Thus, PSI would look to the person in the maintenance management position to attend to the duties of running, managing, and supervising the shop as distinct from Mr. Garcia's position as a mechanic in the shop. Although each of the three individuals who held the position testified that they spend a substantial amount of time in the shop doing mechanic work on the trucks, this reality seems to have been necessitated by financial and other problems surrounding the company at the time. The fact remains that the maintenance manager held additional duties and responsibilities giving rise to a substantial change in their employment relationship with PSI. Each of the three individuals who held the position testified in their depositions as to the added responsibilities of the position to include supervising, filling out paperwork, and generally being in charge of "cleaning up" the shop that appears to have been in a significant state if disarray. Further, the position seemed to have a different pay structure than that of the mechanics. Mr. Martinez testified his pay structure changed from an hourly rate to an annual salary even though his total take home pay did not change significantly. Based on this record, the Court concludes the maintenance manager's relationship to PSI was new and distinct such that the denial of the promotion is actionable under pre-amendment § 1981. Therefore, the claim is subject to Idaho's two-year statute of limitations. Mr. Garcia filed his Complaint on February 3, 2010, outside of the two-years, making the claim untimely as to the alleged denial of promotional opportunities in July 2006 and

**MEMORANDUM ORDER - 18**

January and May of 2007. Accordingly, the Motion for Summary Judgment is granted as to this claim.

      **B.**     **Statute of Limitations as to the Title VII Claims**

      Title VII requires that any claims be filed within 300 days from the date of the denied promotions. *See* 42 U.S.C. § 2000e-5(e)(1). Here, Mr. Garcia filed his IHRC charge on March 13, 2008. Thus, the alleged denied promotion must have occurred on or after May 18, 2007.[6] Because all of the promotions in this case occurred before that date, Defendants argue this claim is time barred. (Dkt. 39 at 13.) The July 2006 and January 2007 promotions are clearly outside of the 300 days and, therefore, are precluded. As to the May 2007 promotion, the parties disagree as to its exact date.

      Mr. Garcia argues a specific date of the May 2007 promotion has not been provided by the defense. (Dkt. 52 at 2 n. 1.) In response, the Defendants point to their Statement of Facts and Affidavit of Jerri Hunt both of which state Ed McCartney was promoted to maintenance manager effective May 7, 2007. (Dkt. 39 at ¶ 25 and Hunt Aff, Ex. H at ¶ 5.) If that is the case, Mr. Garcia's IHRC charge had to have been filed on or before March 2, 2008. Again, his charge was not filed until eleven days later on March 13, 2008. Mr. Garcia has not disputed the date of Ed McCartney's promotion but, instead, merely stated he did not know the exact date of the promotion. The defense has brought forth evidence by way of affidavit attesting to the promotion date which establishes the

---

      [6] Plaintiff argues this date is May 15, 2007. (Dkt. 52 at 3 n. 1.) The Court's calculation, however, is consistent with the Defendants' resulting in the date of May 18, 2007 as being 300 days preceding the March 13, 2008 filing.

date to be outside of the 300-day time limit for a Title VII claim. Accordingly, the Court will grant the Motion for Summary Judgment as to the Title VII May, 2007 promotion claim.

Alternatively, Mr. Garcia argues his claim as to the May 2007 promotion is timely because he "initially contacted the IHRC on February 27, 2008 to lodge his complaint." (Dkt. 52 at 3 n. 1.)[7] This assertion is based on Mr. Garcia's own Declaration wherein he goes on to state he signed the "final charge on March 10, 2008 and mailed it back to the Commission." (Dkt. 54 at ¶ 11.) Though Mr. Garcia may have orally contacted the IHRC in February of 2008, his actual charge was not filed until March 13, 2008. Charges made under Title VII must be in writing. *See* 42 U.S.C. § 2000e-5(b) (requiring charges to "be in writing under oath or affirmation"); 29 C.F.R. § 1601.9. Attached to his Affidavit is Exhibit A which is a copy of Mr. Garcia's final charge made to the IHRC and it is dated as received by the IHRC on March 13, 2008. (Dkt. 54, Ex. A.) Again, this date is beyond the 300-day time limit for filing Title VII claims and these claims are time barred.[8] The Motion is granted as to these claims.

### C.      Statute of Limitations as to the IHRA Claims

The statute of limitations for IHRA claims is one year. *See* Idaho Admin. Code

---

[7] Mr. Garcia's Affidavit actually states that he contacted the IHRC on "February 28, 2008 to file a charge of discrimination." (Dkt. 54, Garcia Aff. at ¶ 11.)

[8] Defendants challenge whether or not this document constitutes a valid charge under Title VII. (Dkt. 70 at 4-5.) The Court need not address this argument as the statute of limitations issue is sufficient to preclude the claims.

**MEMORANDUM ORDER - 20**

45.01.06(a). As stated above, Mr. Garcia filed his charge with the IHRC on March13, 2008. Thus, the May 7, 2007 promotion claim falls within the statute of limitations period. The Motion for Summary Judgment is denied as to this claim. The claims as to the July 2006 and January 2007 promotions are, however, outside of the one-year time frame and are therefore untimely.[9] The Motion for Summary Judgment is granted as to these two promotion claims.

3.      **Terms and Conditions Claims / Hostile Work Environment**

        A.      **Exhaustion of Administrative Remedies**

Defendants argue Mr. Garcia failed to exhaust his administrative remedies under Title VII and IHRA because he failed to present any claim for hostile work environment in either administrative proceedings. (Dkt. 39 at 14.) Mr. Garcia maintains his Terms and Conditions claims under Title VII and IHRA were exhausted because they are "like or reasonably related to" his exhausted claims and they fall "within the scope of an EEOC investigation that reasonably could [have been] expected to grow out of the allegations." (Dkt. 52 at 19.)

Mr. Garcia does not appear to be pursuing a hostile work environment claim. (Dkt. 52 at 18.) If he is, such a claim will not be allowed for the same reasons as stated above on the constructive discharge argument – he failed to exhaust his administrative remedies

---

[9] In his response brief, Mr. Garcia seems to argue his IHRA claims were "intertwined" and "reasonably related" with his other claims as a constructive discharge claim and was properly exhausted. (Dkt. 52 at 11-12, 19.) This argument does not address or resolve the statute of limitations problem under the IHRA as to the July 2006 and January 2007 promotions.

as to a claim of hostile work environment. Instead, the claims raised by Mr. Garcia here are for discrimination against an individual "with respect to his compensation, terms, conditions, or privileges of employment" based on his national origin. (Dkt. 52 at 18.) As to that claim, the Court finds Mr. Garcia has exhausted his administrative remedies.

The charge filed with the IHRC and EEOC clearly alleges employment discrimination based on national origin. Even if not explicitly stated in the charge, Mr. Garcia's claims regarding denial of employment benefits in the form of promotion, wages, shift schedules and the like are encompassed and reasonably related to the factual allegations contained in the charge filed with the EEOC and IHRC. Accordingly, the Motion for Summary Judgment is denied as to these claims.

### B.      Failure to Complain to Supervisors

Because Mr. Garcia did not utilize the complaint mechanism available to him during his employment, Defendants contend, he is barred from raising a hostile work environment claim here. (Dkt. 39 at 15.) Mr. Garcia has responded arguing he was not required to complain about the discrimination beyond that of his direct supervisors and, regardless, to do so would have been unreasonable and futile. (Dkt. 52 at 20.)

Again, it does not appear Mr. Garcia is raising a hostile work environment claim. Regardless, the Court will address this argument as it may relate to other of Mr. Garcia's claims. In doing so, the Court finds a genuine issue of material fact exists on this question as it may relate to Mr. Garcia's claims. In his letters to the IHRC, Mr. Garcia repeatedly states that it was futile for him to have complained about any discrimination beyond his

**MEMORANDUM ORDER - 22**

immediate supervisor as there was a "straight pipe line back to Don Allen." (Dkt. 39-14, Att. K.) Further, Mr. Garcia alleges the Defendants' own employment policy encouraged employees to complain to their direct supervisors, which Mr. Garcia alleges he did. (Dkt. 52 at 9) (Dkt. 53-17, Ex. Q.)[10] The Court finds genuine issues of disputed facts are raised as to this issue that must be decided by a jury and the Motion for Summary Judgment is denied.

### C.    The Alleged Harassment Was Neither Severe nor Pervasive

Defendants assert the alleged harassment in this case was not so pervasive or sever to sustain a claim for hostile work environment. (Dkt. 39 at 16.) As with the preceding issue, failure to complaint to supervisors, this question also turns on disputed facts and the Court denies the Motion on that basis to the extent it is relevant to any of Mr. Garcia's surviving claims.

### 4.    Wage Claims

Defendants contend, as a matter of law, there is no evidence of wage

---

[10] The Defendants' policy states:

If you believe you have been subjected to any form of unlawful discrimination, submit a written complaint to your supervisor, the individual with day-to-day personnel responsibilities, or Corporate Human Resources. Your complaint should be specific and should include the names of the individuals involved and the names of any witnesses. Waste Connections, Inc. will immediately undertake an effective, thorough, and objective investigation and attempt to resolve the situation.

(Dkt. 53-17, Ex. Q.)

**MEMORANDUM ORDER - 23**

discrimination and, regardless, any difference in pay, is based on legitimate reasons. (Dkt. 39 at 17-18.) Mr. Garcia asserts there is sufficient evidence for a jury to find wage discrimination occurred in this case. (Dkt. 52 at 13.)

On this point the parties clearly dispute the facts giving rise to the claim. Both sides argue over the basis and reasons underlying Mr. Garcia's wages, the fact that he did not receive a pay increase after 90 days of employment or routine annual raises, the amount of the raise he did receive, and his wages as compared to other employees. Mr. Garcia has submitted sufficient materials to give rise to a genuine issue of material fact as to these claims including charts, Declarations, and deposition testimony. (Dkt. 52.) Having reviewed the record and the parties' arguments on this issue, the Court finds there are genuine issues of material fact that a jury must decide. Therefore, summary judgment is inappropriate on this issue.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Dkt. 39) is **GRANTED** in part and **DENIED** in part as follows:

1.     As to any Constructive Discharge Claim, the Motion is **GRANTED**.

2.     As to the Promotions Claims brought under 28 U.S.C. § 1981 and Title VII, the Motion is **GRANTED**. As to the Promotions Claims brought under the IHRA, the Motion is **GRANTED** as to the July, 2006 and January, 2007 claims and **DENIED** as to the May, 2007 claim.

3.     As to the Terms and Conditions Claims, the Motion is **DENIED**.

4.     As to the Wage Claims, the Motion is **DENIED**.

**MEMORANDUM ORDER - 24**

IT IS FURTHER ORDERED that the counsel for parties contact Diane McDonald,

Judicial Assistant at 208-334-9270, to reset the Jury Trial in this matter.

DATED:  **March 16, 2012**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM ORDER - 25**