UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

JUAN GARCIA,

                Plaintiff,

      v.

PSI ENVIRONMENTAL SYSTEMS, a
California Corporation, and WASTE
CONNECTIONS, INC., a California
Corporation,

              Defendant.

Case No. 1:10-cv-00055-EJL

**MEMORANDUM DECISION AND
ORDER ON MOTIONS IN LIMINE**

## INTRODUCTION

The Court has before it plaintiff's and defendants' motions in limine (Dkt. 78, 82). The facts and legal arguments are adequately presented in the briefs and record, and oral argument will not aid the decision-making process. The Court will therefore rule without a hearing.

The parties should be aware, however, that in limine rulings are provisional. The Court might change its mind in the context of the trial, and will therefore entertain objections to individual proffers of evidence during trial, even if those proffers fall within the scope of this order.  However, the parties are directed to raise these issues in advance, outside the presence of the jury.

**MEMORANDUM DECISION AND ORDER -**

## LEGAL STANDARD

Trial judges are afforded wide discretion in determining whether evidence is relevant. *United States v. Alvarez*, 358 F.3d 1194, 1205 (9th Cir. 2004) (citing *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983)). Because "[a]n in limine order precluding the admission of evidence or testimony is an evidentiary ruling,...a district court has discretion in ruling on a motion in limine." *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991) (citations omitted).

As already noted, in limine rulings "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce v. United States*, 469 U.S. 38, 41 (1984). Further, just because the Court denies a motion seeking to exclude evidence "does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Indiana Ins. Co. v. General Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

## PLAINTIFF'S MOTIONS IN LIMINE

### 1.      The Probable-Cause Determination

In his first motion in limine, plaintiff seeks an order allowing him to introduce the Idaho Human Rights Commission's probable-cause determination. *See May 2009 Letter and Summary of Investigation ("Probable-Cause Determination"), Ex. A to Plaintiff's Motion*, Dkt. 79-1.

In *Plummer v. Western International Hotels Co.*, 656 F.2d 502, 504 (9th Cir. 1981), the Ninth Circuit held that a plaintiff has a "right to introduce an EEOC probable cause determination in a Title VII lawsuit, regardless of what other claims are asserted, or whether the case is tried before a judge or jury." *Id.* at 505.  The Ninth Circuit later indicated "the *Plummer* ruling is not restricted solely to EEOC findings of probable cause but extends to similar administrative determinations, . . . ." *Heyne v. Caruso*, 69 F.3d 1475, 1483 (9th Cir. 1995).

Notwithstanding *Plummer,* defendants argue that the Commision's probable-cause determination should be excluded because it (1) bears "little to no relevance to Plaintiff's only [viable] promotion claim"; (2) is "rife with inaccuracies and is incomplete, internally inconsistent, and contradicted by sworn testimony – in other words it is untrustworthy"; and (3) is unduly prejudicial under Federal Rule of Evidence 403.  The Court is not persuaded by these arguments.

### a)  Relevance

As for the first argument – relevance – defendants note that although Garcia was passed over for promotion three times (in June 2006, in January 2007, and again in May 2007), he has just one actionable promotion-denial claim, related to the May 2007 denial. This Court previously ruled that the claims related to the first two promotions are time-barred.

The probable-cause determination, however, discusses all three promotions. Moreover, defendants interpret the determination as implicitly finding that racial bias did *not* motivate the only actionable promotion denial (the May 2007 denial) because (1) the

**MEMORANDUM DECISION AND ORDER -**

report determined that defendants were not liable "concerning the issue of wages" after May 2007, and (2) elsewhere the report notes that the person who was promoted instead of Garcia in May 2007 had "both mechanical and supervisory experience" – unlike the persons who were previously promoted instead of Garcia. *Probable-Cause Determination*, at 6, 7.  Defendants thus argue that the entire report is irrelevant.

The Court disagrees.  First, as defendants seem to concede, the report could be read as concluding that Mr. Allen discriminated against Garcia with respect to all three promotion denials – not just the last one.  In fact, the report includes a blanket statement that "national origin was a motivating factor in Mr. Allen's decision . . . not to promote Complainant . . . ." Dkt. 79-1, at 7.  Second, looking at the issue more broadly, evidence of the time-barred promotion denials is admissible as background evidence to support the timely promotion claim.[1]  *See, e.g., Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2006).

### b)  Trustworthiness

Defendants next contend that the report is not trustworthy and should therefore be excluded under Rule 803(6) and/or 803(8)(c).

In the Ninth Circuit, the trial court begins with a presumption that the disputed report is trustworthy. *See Montiel v. City of L.A.,* 2 F.3d 335, 341 (9th Cir.1993); *Johnson v. City of Pleasanton*, 982 F.2d 350, 352 (9th Cir.1992). The party opposing introduction of the evidence must present enough negative factors to persuade the court that the report

---

[1] This issue is discussed more thoroughly below, in the Court's ruling on plaintiff's Motion in Limine No. 2

should not be admitted. *Johnson*, 982 F.2d at 352. This is because the court assumes that

public officials perform their duties properly without motive or interest other than to

submit accurate and fair reports. *Id*. at 352-53.  Further, "[t]he role of the court in

determining trustworthiness is not to assess the report's credibility, but to evaluate

whether the report was compiled or prepared in a way that indicates its reliability."

*Hedgepeth v. Kaiser Found. Health Plan*, 73 F.3d 386 (9th Cir. 1986) (unpublished

disposition) (*citing Moss v. Ole S. Real Estate, Inc*., 933 F.2d 1300, 1305-08 (5th

Cir.1991)).

The Court is satisfied that the probable-cause determination meets the level of

trustworthiness required.  Significantly, the only case authority defendants cite in support

of their trustworthiness argument – *Hedgepeth v. Kaiser Foundation Health* Plan, 73 F.3d

386, 1996 WL 29252, at *2 (9th Cir. 1996) (unpublished table disposition) – is easily

distinguishable.   In that case, the Ninth Circuit concluded that an administrative finding

issued by the Oregon Bureau of Labor and Industries' Civil Rights Division (BOLI) was

untrustworthy "on its face" because

> [t]he report admits the investigator had access to *almost no relevant
> information* from Kaiser because Kaiser "has not permitted an opportunity for
> [its nondiscriminatory] reasons to be tested for pretext." The report simply
> concludes "[i]n the absence of satisfactory evidence to the contrary, it appears
> that Complainant's age and opposition to unlawful practices were key factors in
> Respondent's decision to terminate Complainant." Since the author concedes
> he was unable to fully investigate the claim, the BOLI determination is
> inadmissible under FRE 803(8)(c).

*Id.*  (emphasis added).

MEMORANDUM DECISION AND ORDER -

There are no such pervasive problems with the report at issue here.  In one instance, the report indicates that defendant PSI "provided *limited* wage data . . . ." *Probable-Cause Determination*¸ at 6 (emphasis added); *see also Opp.*, Dkt. 91, at 4 (indicating that the report only considered four other employees' salary, when there were actually 11 other employees).  But having access to "limited" wage data is a far cry from having "almost no relevant information."

Further, although defendants say the report is "rife" with inaccuracies, many of the listed inaccuracies are minor.  *See, e.g., Opp.,* Dkt. 91, at 7 (observing that the report wrongly notes, at one point that the plaintiff was hired on October 12, 2005, but elsewhere correctly notes that plaintiff was hired on November 4, 2005).  And while other inaccuracies are more significant, inaccuracies do not pervade the report, nor are they so serious as to convince the Court that the report is not trustworthy.

Defendants also point out that: (1) some witnesses said one thing to the investigator, and then contradicted themselves in their depositions; and (2) other evidence will undermine the report.  But the fact that deponents may have changed their story after talking to the investigator, or that other witnesses might have contradictory information, does not mean the report itself was prepared in such a way to indicate it is not trustworthy.

In sum, defendants' attacks on the determination go more to the weight the jury should give to the determination than to its trustworthiness.  And as *Plummer* observed:

> The defendant, of course, is free to present evidence refuting the
> findings of the EEOC and may point out deficiencies in the EEOC
> determination on remand [back to the trial court.]  Such evidence

would go to the weight to be given by the trier of fact to the EEOC determination.

656 F.3d at 505 n.9.

### c) Rule 403(b)

Finally, the Court overrules defendants' Rule 403 objection. The Ninth Circuit has "mandate[d]" that probable-cause determinations by the EEOC and other similar determinations be admitted into evidence. *See Heyne*, 69 F.3d at 1483 (referring to "our mandate regarding the admissibility of administrative determinations outlined in *Plummer*"). In issuing that mandate, *Plummer* conclusively found that the prejudicial effect of the probable-cause determination far outweighed the prejudicial effect it may have on a jury. 656 F.3d at 504-05; *see also Bradshaw v. Zoological Society*, 569 F.2d 1066, 1069 (9th Cir.1978). *Plummer* thus controls. Moreover, even in the absence of *Plummer,* the Court is not persuaded that the prejudicial effect of the probable-cause determination outweighs its probative value.

### 2. The June 2006 and January 2007 Promotion Denials

Garcia's second motion in limine seeks an order allowing him to introduce evidence regarding the two time-barred promotion denials.

The Supreme Court and the Ninth Circuit have held that time-barred conduct may be offered as evidence of discriminatory intent to support timely claims. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2006); *United Airlines Inc. v. Evans*, 431 U.S. 533, 558 (1977); *Lyons v. England*, 307 F.3d 1092, 1111 (9th Cir. 2002) (time-barred acts of employment discrimination "relevant as background and may be considered by the

MEMORANDUM DECISION AND ORDER -

trier of fact in assessing the defendant's liability . . . .").

Garcia's failure to get promoted in June 2006 and January 2007 involve the same

decision-maker who passed over Garcia for promotion in May 2007.  Further, the two

earlier denials occurred within a year of the later, actionable denial.  The Court will

therefore allow plaintiff to introduce evidence relating to the earlier promotions as

background evidence relevant to his timely promotion-denial claim.[2]  *Cf. Morgan,* 536

U.S. at 113 ("relevant background evidence, such as statements by a decisionmaker or

earlier decisions typifying the retaliation involved, may be considered to assess liability

on the timely alleged action").  The Court has determined that any prejudicial effect of

this evidence is outweighed by its probative value.  *See* Fed. R. Evid. 403.  Nevertheless,

to ensure that the jury is not confused as to which claims are actionable in this case, the

Court will read, when necessary, an appropriate limiting instruction.

Finally, the Court rejects defendants' argument that this evidence should be barred

under Rule 404(b) argument.  Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove
> the character of a person in order to show action in conformity
> therewith. *It may, however, be admissible for other purposes, such as*
> *proof of motive, . . . intent, . . . .*

Fed. R. Evid. 404(b)(2) (emphasis added). As the italicized portion demonstrates, Rule

404(b) actually supports considering the time-barred evidence for purposes of

establishing discriminatory intent.  *See, e.g. Oest v. Illinois Dept. of Corrections*, 240

---

[2] Given this ruling, the Court need not address plaintiffs' argument that this evidence is independently admissible to support his disparate-treatment claim.

F.3d 605, 614 n.4 (7th Cir. 2001); *Pleasants v. Albaugh*, 258 F. Supp. 2d 53 (D.D.C.

2003).

### 3.     Single Employer

Plaintiff's third motion in limine seeks to introduce evidence showing that

defendants PSI and WCI are a "single employer."  Here, plaintiffs refer to the Ninth

Circuit's four-part single-employer test, which includes these factors:  "(1) interrelated

operations, (2) common management, (3) centralized control of labor relations, and (4)

common ownership or financial control."  *Morgan v. Safeway Stores, Inc.*, 884 F.2d 1211,

1213 (9th Cir. 1989).

Defendants' opposition is not helpful.  They concede that "plaintiff can introduce

evidence in an attempt to establish defendants' liability," *Opp.* at 14, but then go on to

argue that the single-employer standard is irrelevant.  What they do not do – at least in

their opposition to the motion in limine – is explain what standard applies, and what

evidence is relevant to that standard.  In their trial brief, however defendants assert that

plaintiff must satisfy the joint employer test, and they articulate four relevant factors:

"whether the alleged joint employer (1) supervised the employees; (2) had the power to

hire and fire; (3) had the power to discipline; and (4) supervised the employees'

worksite."  *Defendants' Trial Memo.*, Dkt. 92, at 7 (citing *Buttars v. Creekside Home

Health, Inc.*, No. 07-0204-E-BLW, 2008 U.S. Dist. LEXIS 75700, at *4 (D. Idaho Sept.

25, 2008)).

In absence of a more thorough explanation from defendants, it appears that the

evidence plaintiff references in his motion is admissible to establish both defendants'

liability, and the Court will permit such evidence at trial. However, plaintiff's counsel is instructed to refrain from using the term "single employer" at trial.

**4.     Employment Records**

Lastly, plaintiff asks the Court to exclude his employment records related to other employers, as well as employment records for Tim Bagley and Biff Lee. Plaintiff does not refer to any specific records; he seeks a blanket exclusionary order. Plaintiff argues that these types of records are "irrelevant, will waste time, . . . are potentially prejudicial [and] . . . are inadmissible character evidence . . . ." *Mot.*, at 9. Plaintiff also asserts that some of the subpoenas used to get these documents were untimely. The Court will address the timeliness argument first, and then turn to the substantive arguments.

**a) Timeliness**

The discovery cutoff in this case was March 18, 2011. In late fall 2010, defendants subpoenaed employment records from several of plaintiff's former and subsequent employers. Around the same time, defendants also subpoenaed employment records from other PSI employees who are friendly to plaintiff. *See Ex. H to Plaintiff's Motion in Limine*.

A few subpoenas came down to the wire; they were issued on March 17, 2011 – one day before the discovery cutoff – and called for productions in April 2011. Defendants say they did not serve at least one of these subpoenas until so late because they did not know about that particular employer until a March 12, 2011 deposition. Significantly, plaintiff did not promptly complain about these subpoenas or move to quash them. Instead, he waited until the eve of trial to raise the issue. Under these

circumstances, the Court will not exclude employment records due to issues surrounding the timeliness of the subpoenas.[3]

### b) Garcia's Employment Records

Similarly, the Court will not exclude the employment records (with one specific exception, discussed below) based on plaintiff's substantive arguments.

Dealing first with plaintiff's own records from former employers, the Court finds these records to be relevant to this dispute, to the extent they bear on Garcia's mechanic or supervisory experience (or lack thereof).  Specifically, they are relevant to whether Garcia was qualified for the promotions he did not receive.  Garcia asserts he was qualified for those promotions.  Defendants are entitled to refute that assertion.  The Court will therefore deny Garcia's request for a blanket order excluding all his employment records.

Garcia argues that some of these records should be excluded as inadmissible character evidence under Rule 608.  Apparently, Garcia did not list all of his former employers in the appropriate section of his PSI employment application.  He argues that defendants are improperly seeking to introduce some of the employment records to show that he is untruthful.  *See* Fed. R. Evid. 608.  Defendants, however, correctly point out that the documents are admissible for another purpose.  Specifically, if plaintiff failed to list mechanic jobs on his PSI application – and he was fired from those jobs – that

---

[3] Likewise, the Court is not persuaded to exclude records from Aslett Electric, Inc. (one of Garcia's former employers) on the technical grounds plaintiff asserts.  The Court will not engage in a detailed discussion here, however, because it has determined that the Aslett records are irrelevant. If, however, the Court changes its mind on relevance, suffice it to say that plaintiff's technical arguments regarding the Aslett documents are not convincing.

evidence speaks to his qualifications and, thus, may refute plaintiff's contention that he was discriminated against.  The Court will therefore deny plaintiff's motion to the extent it seeks to broadly exclude all employment records.

The Court will, however, exclude records regarding plaintiff's employment with Aslett Electric, Inc.  (These are the only employment records plaintiff specifically discussed in his motion.)  When Garcia applied for a job with PSI, he did not list Aslett as a former employer, possibly because he only worked for that company for a couple months, total, and he was ultimately fired from Aslett.  *See Employment App.*, Ex. K to Opp., Dkt 91-12, at 3.

The Aslett records do not seem relevant to this lawsuit.  First, it is unclear what Garcia actually did for Aslett.  The job descriptions are cryptic, describing him first as a "laborer" and then as an "operator."   He was fired from the "operator" job, and another cryptic explanation is given for that:  "safety hazard."  If Garcia was a mechanic for Aslett, then the November 2005 firing may be relevant to refute his contention that he was a qualified mechanic.  Otherwise, the records are irrelevant.

Defendants do not explain what Garcia did at Aslett, but they contend that the Aslett records are relevant because Garcia earned $13 per hour at that company, which was the exact amount he received when he started working for defendants.  This argument is flawed, however, because defendants presumably did not even know about Garcia's employment with Aslett when they decided his starting pay rate.

In sum, the Court will grant plaintiff's motion to exclude the Aslett records because they are not relevant.  Otherwise, the Court denies plaintiff's motion to exclude

MEMORANDUM DECISION AND ORDER -

employment records.

### c) Bagley's Employment Records

The Court will also deny plaintiff's motion as it relates to Tim Bagley's

employment records.[4]  Bagley testified in his deposition that he did not feel qualified for

the promotion he received instead of Garcia, yet after he left defendants' employ, he sent

a letter to another prospective employer.  Many letters like this contain some degree of

puffery and, apparently, Bagley's was no exception.  He expounded upon his

qualifications.  Defendants say this will undermine the plaintiffs' argument that Garcia

should have received the promotion that went to Bagley.  The Court finds that this

evidence is relevant and will therefore allow it.

DEFENDANTS' MOTIONS IN LIMINE

**1.  Evidence Relating to Defendants' Hiring and Compensation Decisions After Plaintiff's December 2007 Resignation**

In their first motion in limine, defendants ask the Court to exclude evidence

regarding pay and hiring decisions after Garcia's December 2007 resignation under

Federal Rule of Evidence 402.  They also seek to exclude pay and hiring decisions made

by David Grantham.  The Court will deny this motion.

As noted, Garcia resigned in December 2007.  Up until November 2007, Don

Allen decided what pay Garcia would receive, as well as whether he would be promoted,

with Vice President Eric Merrill having "some input" on those decisions.   Allen,

---

[4] Defendants focused mainly on their intent to introduce Tim Bagley's employment records. The Court will therefore restrict this ruling to Bagley at this point, although presumably the order related to Bagley will provide the litigants with some general guidance on the question of other employees.

however, quit in November 2007 (the month before Garcia quit) and Merrill moved out of his role as VP in October 2007.  The upshot was that as of around November 2007, David Grantham decided which mechanics would be hired and what those mechanics would be paid.  Ed McCartney worked with Grantham on these decisions.

Defendants first argue that because Grantham did not make any decisions regarding plaintiff, his decisions are entirely irrelevant.   The Court rejects this argument because Garcia alleges that in November 2007, Grantham rejected his and McCartney's request that Garcia's pay be increased to the planned rate for new hires.

Next, defendants argue that *any* decisions after plaintiff resigned are irrelevant. Here, defendants argue that because Plaintiff cannot seek wages for the post-December 2007 period, pay and hiring decisions post-December 2007 are irrelevant.  The Court rejects this argument as well.  Even assuming plaintiff is barred from seeking post-December 2007 wages, this does not convince the Court that pay and hiring decisions after that date are irrelevant to plaintiff's claims that he was paid too little.  To give an obvious example – and this is what plaintiff says happened – if defendants hired individuals who were essentially equal to plaintiff shortly after he left, but paid them significantly more, this might tend to prove that plaintiff was in fact discriminated against.

The Court is not persuaded that this evidence would be "extensive and complex." For example, defendants point out that plaintiff wants to introduce evidence of "no less than four separate mechanic hires in 2008" and then have the jury compare those resumes with his own.  All things are relative, but that does not seem to be a particularly

**MEMORANDUM DECISION AND ORDER -**

"extensive or complex" evidentiary task.  The Court will deny defendants' motion to exclude this evidence under Rule 403.

## 2.      Evidence of Emotional Distress

In their second motion in limine, defendants seek to exclude emotional-distress evidence.  Specifically, Garcia alleges he suffered emotional distress after he was passed over for promotion in May 2007.  Defendants argue that this evidence should be excluded because emotional distress damages are not expressly permitted under the Idaho Human Rights Act.  *See* Idaho Code § 67-5908 (setting forth a non-exhaustive list of available remedies).  The Court will deny this motion.

The remedies provision of the Idaho Human Rights statute does not limit the type of remedies available to plaintiffs.  *See* Idaho Code § 67-5908.  Rather, before listing specific remedies, it states that "[s]uch remedies may include, but are not limited to: . . . ." various listed remedies.[5]  *Id.* §67-5908(3).  Further, the express purpose of the Idaho

---

[5]
In full, Idaho Code § 67-5908(3) states:

In a civil action filed by the commission or filed directly by the person alleging unlawful discrimination, if the court finds that unlawful discrimination has occurred, its judgment shall specify an appropriate remedy or remedies therefor. Such remedies may include, but are not limited to:

(a) An order to cease and desist from the unlawful practice specified in the order;

(b) An order to employ, reinstate, promote or grant other employment benefits to a victim of unlawful employment discrimination;

(c) An order for actual damages including lost wages and benefits, provided that such back pay liability shall not accrue from a date more than two (2) years prior to the filing of the complaint with the commission or the district court, whichever occurs first;

(d) An order to accept or reinstate such a person in a union;

Human Rights Act is to execute the policies embodied in the federal Civil Rights Act of 1964, which enacted Title VII.  *See* Idaho Code § 67-5901.  As originally enacted, Title VII did not allow recovery of compensatory damages, but in 1991 Congress amended Title VII by passing the Civil Rights Act of 1991, which specifically allows plaintiffs to recovery compensatory damages.

Generally speaking, the Idaho Supreme Court has broadly interpreted the remedies provision of the Idaho Human Rights Act. For example, in *O'Dell v. Basabe*, 810 P.2d 1082, 1097 (Idaho 1991), the court held that front pay is an admissible element of damages under the Act, although the Act does not expressly include the term "front pay." The court reasoned that "actual damages" – which are a specifically listed remedy – are "commonly understood as those actual losses caused by the conduct at issue," which included front pay.  *Id.*

And, more to the point here, in *Paterson v. Idaho*, 915 P.2d 724, 733 (Idaho 1996), the Idaho Supreme Court affirmed emotional distress damages under the Idaho Human Rights Act.  The court rejected defendants' arguments that such damages were improper because the trial court had dismissed plaintiff's separate claim for intentional infliction of emotional distress.  The Court reasoned that while "Paterson's claim may not have risen to the level necessary to meet the legal elements required for an intentional infliction of emotional distress cause of action," that fact  "does not block her recovery for the

---

(e) An order for punitive damages, not to exceed one thousand dollars ($1,000) for each willful violation of this chapter.

embarrassment and humiliation she suffered as a result of her work environment." *Id.* at

733.

Defendants correctly point out that in *Paterson*, (1) the parties assumed

compensatory damages were available and, (2) the defendants did not challenge an

instruction that "directed the jury, upon a finding of liability, to award Paterson

compensatory damages for 'mental pain and suffering, including mortification,

humiliation, and embarrassment resulting from the hostile working environment.'" *Id.*

Nonetheless, this Court finds *Paterson* persuasive for the proposition that emotional

distress damages are recoverable under the Idaho Human Rights Act.

That would be the end of the matter, but for the Idaho Supreme Court's decision in

*Stout v. Key Training Corp.*, 158 P.3d 971 (2007). *Stout* does not address emotional

distress damages under the Idaho Human Rights Act. But it does find that attorneys' fees

are not recoverable under the Act because attorneys' fees – like emotional distress

damages – are not a specifically listed remedy. The court concluded that the Idaho

legislature must not have intended plaintiffs to recover attorneys' fees because the Human

Rights Act does *not* include attorneys' fees, even though the Civil Rights Act did allow

attorneys' fees at that time. As the court put it,

> [T]he federal Civil Rights Act provision allowing for an award of attorney
> fees had been enacted long before the Idaho Human Rights Act remedy
> provision. Yet, the Idaho legislature chose not to include attorney fees in its
> remedy provision.

*Id.* at 973-74 (internal footnote omitted)

By analogy, the Idaho legislature did not amend the Act to include compensatory

**MEMORANDUM DECISION AND ORDER -**

damages after Congress so amended Title VII.  Defendants thus conclude that the

legislature must not intend for plaintiffs to recover emotional distress damages under the

act.

This argument is unavailing.  First, *Stout* does not directly control here as it does

not address emotional distress damages.  Second, the Court finds it significant that *Stout*

focused on attorneys' fees.  Attorneys' fees are not a component of "actual damages"

suffered by a plaintiff due to the underlying event; they are a cost of enforcing a legal

right.  Here, Garcia is not seeking to recover the cost of enforcing the act; he is seeking

"actual damages," – which are permitted under the Act.  *See* Idaho Code §67-5908(3).

In sum, the Court concludes that Garcia may seek emotional distress damages.

*Accord Green v. Bannock Reg'l Med. Ctr.*, Case No. 91-0149-LMB (Mar. 15, 1993)

(transcript of Judge Boyle's oral decision permitting emotional distress damages under

the Act).

### 3.    The Death of Plaintiff's Daughter

Plaintiff was prompted to move to Idaho after his daughter tragically died.  The

Court will exclude this evidence under Rules 401, 402, and 403.  The Court is not

persuaded by plaintiff's arguments to the contrary.  *See Opp.*, at 10-11.

### 4.    Sexual Harassment

The Court will exclude evidence regarding accusations that Don Allen sexually

harassed employees under Rules 401, 402, and 403.  In any event, plaintiff indicated that

he did not intend to question Allen regarding these allegations "unless Defendants open

the door on this line of questioning or it becomes relevant for rebuttal/impeachment

purposes." *Opp.*, at 11.

**5.      Criminal Backgrounds of other WCI or PSI employees**

At one point in this litigation, defendants asserted that plaintiff had no claim

because they would have fired him anyway if they had known of information that later

learned (presumably, that he omitted information on his resume).  Defendants no longer

need to assert this theory because of the Court's summary judgment ruling.  But they are

now concerned that plaintiff will seek to show that other employees – who, presumably,

have not been fired – omitted information or otherwise lied on their employment

applications.

The Court agrees that this evidence is not relevant to plaintiff's remaining

claim and will therefore exclude the evidence under Rules 401, 402, and 403.  The

Court is not persuaded to admit evidence regarding the falsity of other employees'

applications simply because plaintiff's applications may be tested within the

bounds of this lawsuit.

**6.      Serrano's Allegations of Discrimination**

The fact that another employee, Phillip Serrano, accused Grantham of

discriminating against him around the same time Grantham allegedly discriminated

against Garcia is admissible for the purpose of allowing Garcia to establish discriminatory

intent.  *See* Fed. R. Evid. 402 & 404(b); *Heyne v. Caruso*, 69 F.3d 1475 (9th Cir. 1995)

(citing *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990) ("As a general rule,

the testimony of other employees about their treatment by the defendant [employer] is

relevant to the issue of the employer's discriminatory intent.")).

## CONCLUSION

In constructing this Order, the Court has endeavored to provide to the parties as much guidance as possible regarding the Court's understanding of the law that applies to this case and the evidence as the parties have represented they intend to rely upon it at trial. In doing so, the Court has entered rulings where it can but for the most part the determination as to the admissibility of particular items of evidence will have to be made during the course of the trial when the Court able to view the evidence in the context in which it is being offered. That being the case, the rulings made in this Order are preliminary. If the evidence presented at trial differs, the Court reserves the right to rule on the admissibility of the evidence accordingly at trial. The parties are directed to notify the Court in advance of any evidentiary issues being raised so that the Court can take up such matters outside of the presence of the jury and to eliminate any undue delay during the trial.

## ORDER

It is **ORDERED** that:

1.  Plaintiff's Motion in Limine (Dkt. 78) is **GRANTED in part** and **DENIED** in part, as explained herein.

2.  Defendants' Motion in Limine (Dkt. 82) is **GRANTED in part** and **DENIED in part**, as explained herein.



DATED: **June 20, 2012**

Edward J. Lodge, U.S. District Judge

MEMORANDUM DECISION AND ORDER -