UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JUAN GARCIA,<br><br>    Plaintiff,<br>  v.<br><br>PSI ENVIRONMENTAL SYSTEMS, a California Corporation, and WASTE CONNECTIONS, INC., a California Corporation,<br><br>    Defendants. | Case No. 1:10-cv-00055-EJL<br><br>**MEMORANDUM DECISION AND ORDER ON BACK PAY** |

## INTRODUCTION

The parties have requested clarification regarding whether Garcia can seek a back pay award extending beyond his December 2007 resignation.[1] The Court concludes he can. Evidence of such damages will therefore be admissible at trial.

## DISCUSSION

Defendants argue that back pay must be cut off as of Garcia's December 14, 2007 because Garcia resigned rather than being constructively discharged. The Court rejects this argument.

---

[1] In their "Response to Plaintiff's Pre-Trial Memorandum, Dkt. 104, defendants raise a variety of additional issues. To the extent these issues require evidentiary rulings, the Court will address them as they arise at trial.

**MEMORANDUM DECISION AND ORDER - 1**

Plaintiff is pursuing a promotion-denial claim under the Idaho Human Rights Act. *See* Idaho Code § 67-5909. If plaintiffs prove discrimination under the Act, the relevant statute provides that the judgment "shall specify an appropriate remedy or remedies . . . ." Idaho Code § 67-5908(3). The permitted remedies expressly include "[a]n order for actual damages including lost wages and benefits, . . . ." *Id.* There is no provision making constructive discharge a prerequisite to obtaining backpay.

The federal cases defendants cite – *Odima v. Westin Tucson Hotel*, 53 F.3d 1484 (9th Cir. 1995) and *Thorne v. City of El Segundo*, 802 F.2d 1131 (9th Cir.1986) – are not directly applicable to Garcia's state law claim. These cases deal with federal Title VII claims and, as such, are not binding authority as to whether Garcia is entitled to seek back pay under the Idaho Human Rights Act. *Cf. Martini v. Boeing Co.*, 971 P.2d 45 (Wash. 1999) (permitting employee to recover front and back pay under state law claim, in the absence of a constructive discharge claim).

To be sure, this particular conclusion arguably has its weaknesses because the Idaho Human Rights Act expressly states that one of its purposes is to implement Title VII in Idaho. *See* Idaho Code § 67-5901(1) (providing that one of purposes of the Act is to "provide for execution within the state of the policies embodied in the federal Civil Rights Act of 1964, as amended, . . . ."). Further, in dicta, the Idaho Supreme Court has cited a case to the same effect as *Thorne* and *Odima*. *See O'Dell v. Basabe*, 810 P.2d 1082, 1103 (Idaho 1991) (citing, among other cases, *Satterwhite v. Smith*, 744 F.2d 1380 (9th Cir. 1984)).

But *O'Dell* does not hold – or even suggest – that courts must categorically limit backpay awards in promotion-denial claims where there is no constructive discharge. That holding would be generally contrary to *O'Dell's* earlier holding, which broadly construed the remedies provision of the Idaho Human Rights Act to include front pay, even though the statute did not expressly permit front pay.  *See* 810 P.2d at 1097 (observing that the statutory term "'actual damages'" . . . are commonly understood as those actual losses caused by the conduct at issue").

Further, *O'Dell* did not deal with an alleged promotion-denial.  Rather, the plaintiff in that case alleged breach of employment contract and retaliatory discharge under the Human Rights Act, among other claims.  When *O'Dell* cited federal authority dealing with restrictions on back pay, it was mainly concerned with clarifying that employees who sue their employer for breach of an employment contract generally must mitigate damages by seeking other employment.[2]  *Id* at 1103.

In sum, the Court finds no controlling precedent requiring it to deny Garcia's

---

[2] The relevant passage from *O'Dell* states:

> We do not intend our holding today to be construed as eliminating the requirement for an employee claiming a breach of employment contract to mitigate their damages by trying to obtain employment elsewhere. We hold that under these circumstances, O'Dell was not required to accept the position in the Food Division offered by Simplot. O'Dell's rejection of the Simplot's offer to work in the Food Division cannot be used to establish his failure to mitigate.
>
> The jury was instructed that in order to find for O'Dell on the breach of employment contract claim, it would have to find that he was constructively discharged. The trial court correctly instructed that an employee who resigns is not entitled to recover for wrongful termination of employment absent proof of circumstances establishing constructive discharge.

810 P.2d at 1103 (citing *Ford v. Alfaro,* 785 F.2d 835 (9th Cir. 1986); *Satterwhite v. Smith,* 744 F.2d 1380 (9th Cir. 1984); *Knee v. School Dist.*, 676 P.2d 727 (Idaho Ct. App. 1984); *Young v. Southwestern Sav. & Loan Assoc.*, 509 F.2df 140 (5th Cir. 1975)).

attempt to seek backpay based on the absence of a constructive discharge.  But perhaps even more importantly, the Ninth Circuit line of authority defendants rely upon does not require courts to rotely deny plaintiffs' attempts to recover backpay in failure-to-promote claims.  As the Ninth Circuit explained in *Thorne v. City of El Segundo*, "[b]ecause the termination date for backpay awards in Title VII cases is peculiarly dependent upon each case's unique facts . . . *even in cases involving an employer's refusal to promote*, courts do not apply the backpay limitation rotely." *Id*. at 1136 n. 4 (emphasis added). *Thorne* went on to approvingly cite several failure-to-promote cases in which courts awarded backpay past the date of employees' resignations where the resignations were causally related to the discriminatory failures to promote.

*Thorne* also explained the policies underlying the restrictions on back pay:  "There is a valid policy reason for limiting backpay awards in promotion cases. The purposes of Title VII are best served when parties, *where possible,* attack discrimination within the context of their existing employment relationships.  [¶]  An employee faced with an obstacle in the logical progression and development of a career should not quit at the first sign of institutional discrimination."  802 F.2d at 1134 (internal footnote citations and paragraph division omitted).

Here, the Court finds that these policies militate in favor of allowing backpay after Garcia's December 2007 resignation.  According to Garcia, he worked for PSI for over two years; he was denied promotions on three occasions; he was denied pay raises, and he was subjected to racist comments.  Even after the last, May 2007 promotion denial, he continued to work at PSI for eight more months.  The Court agrees with plaintiff that

these facts do not reveal an employee who "impetuously quit at the first hint of discrimination." *Odima*, 53 F.3d at 1496 n.7. Additionally, the Court finds it persuasive that Garcia mitigated his damages by finding employment elsewhere.

Finally, given *Thorne's* instruction that equitable relief awards are "peculiarly dependent upon each case's unique facts," and its apparent approval of awarding backpay past the date of a voluntary resignation if there is a causal connection between the discrimination and the resignation, the Court is not persuaded by defendants' argument that Garcia must have been seeking an "entirely new career" to seek backpay past his resignation. *Cf. Glenn-Davis v. City of Oakland,* No. C 02-2257 SI, 2008 WL 410239 (N.D. Cal. Feb. 12, 2008) (relying on *Thorne*; determining that plaintiff was not barred from seeking front pay in the absence of a constructive discharge).

In sum, given the unique facts and circumstances of this case, the Court finds that plaintiff may seek backpay extending beyond his December 2007 resignation.

DATED: **June 21, 2012**

Honorable Edward J. Lodge
U. S. District Judge